IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHANI K. GUTHULA : | |
|     Plaintiff, : | |
| : | |
| v. : | |
| : | CIVIL ACTION |
| JEH JOHNSON, : | NO. 16-2544 |
| *Secretary of U.S. Department of* : | |
| *Homeland Security*, et al., : | |
|     Defendants. : | |

## ORDER-MEMORANDUM

**AND NOW**, this 6th day of September, 2017, upon consideration of the parties' cross-motions for summary judgment (ECF Nos. 16 and 17), and Plaintiff's Response (ECF No. 18), it is hereby **ORDERED** that said motions are **DENIED** as moot.

It is further **ORDERED** that this case is **DISMISSED** without prejudice for lack of subject-matter jurisdiction for the reasons set forth herein. The Clerk of Court is directed to **CLOSE** this case for statistical and all purposes.

### ANALYSIS

Because Plaintiff does not satisfy the "case or controversy" requirement under Article III, section 2, of the U.S. Constitution, this Court cannot adjudicate the merits of this case and must dismiss it for lack of subject-matter jurisdiction.

**I.    Relevant Factual and Procedural Background**

The following facts are not disputed by the parties. Phani Guthula, an Indian national, holds an H-1B visa, which entitles him to reside and work in the United States for six years so long as he is fully employed by a sponsoring employer. Guthula first obtained H-1B status on October 1, 2013, at the request of his former employer. That H-1B visa was valid until September 25, 2016.

1

Before his H-1B status expired, Guthula experienced a work-related accident and decided to return to school. On February 18, 2015, he applied for a change of status from H-1B to F-1, a visa for non-immigrant, full-time students at accredited, academic institutions. He submitted that application on the proper Form I-539. Six months later, while his Form I-539 was still pending, Guthula accepted a job offer and his new employer applied on his behalf to extend, or revert to, his H-1B status. That application is known as the Form I-129. The new employer filed the Form I-129 with expedited processing service.

Before adjudicating Guthula's Form I-539 for a change to F-1 (student) status, the U.S. Citizenship and Immigration Services (USCIS) approved his new employer's Form I-129 on October 7, 2015, extending his H-1B *until September 9, 2018*. On March 5, 2016, more than a year after submitting his Form I-539, USCIS denied that application because he was no longer a student at that time.

Guthula is dissatisfied with the USCIS's decision to deny his Form I-539, a denial that deprived him of F-1 status while he was a student for about seven months from March 2, 2015, to October 7, 2015. He claims that, as a result of that decision, the time he can expect to remain in this country has been shortened by that seven-month period; had he been granted F-1 status for those seven months, then that time period would not count against the time he could stay on his H-1B visa.

To redress this alleged injury, Guthula brings this action for a declaratory judgment reversing the USCIS's decision and an order directing the Department of Homeland Security (DHS) to state that he was on F-1 status during the seventh-month period he was unemployed and attending an accredited institution. Guthula had also

sought an order directing DHS to state that he had not accrued unlawful status during that seven-month period, but this concern is no longer an issue because USCIS has agreed that he maintained lawful presence during that time.

Because this action raises a purely legal question pertaining to an administrative agency's decision, the parties appropriately filed cross-motions for summary judgment without engaging in any discovery other than the production of the administrative record. *See Lun Kwai Tsui v. Attorney Gen. of U. S.*, 445 F. Supp. 832, 835 (D.D.C. 1978) (citing *Richards v. Immigration & Naturalization Serv.*, 554 F.2d 1173, 1177 (D.C. Cir. 1977), and *Doraiswamy v. Secretary of Labor*, 555 F.2d 832 (D.C. Cir. 1976)).

## II. This Court Lacks Subject-matter Jurisdiction to Adjudicate the Merits

As a threshold matter, a federal court must always satisfy itself of its own subject-matter jurisdiction. *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) ("the first and fundamental question is that of jurisdiction . . . . This question the court is bound to ask and answer for itself, even when not otherwise suggested") (citing *Soc'y Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

To invoke a federal court's jurisdiction, a plaintiff must have standing under Article III's "case or controversy" requirement, which demands an "injury in fact, causation, and redressability." *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 161 (3d Cir. 2015) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-60 (1992)). "The case or controversy requirement must be met regardless of the type of relief sought, including declaratory relief." *Armstrong World*

3

*Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950)).

Related to the concept of standing is the "ripeness doctrine," which determines the proper "timing" for bringing suit. *Id*. at 411 (citing *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580 (1985)). "[T]he constitutional requirement for ripeness is injury in fact." *New York Shipping Ass'n, Inc. v. Waterfront Comm'n of New York Harbor*, 460 F. App'x 187, 189 (3d Cir. 2012) (citing *Duke Power Co. v. Carolina Envtl. Study Grp.,* 438 U.S. 59, 81 (1978)). A "plaintiff need not suffer a completed harm" to establish ripeness, but when "the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III." *Armstrong*, 961 F.2d at 411-12.

Although Defendants do not directly challenge Article III standing or ripeness, they have put those jurisdictional requirements in doubt by arguing that Plaintiff has not yet suffered, and may never actually suffer, an injury. Defendants assert that Plaintiff has not yet been harmed by the USCIS's action because his nonimmigrant status could change between now and the end of his current H-1B visa for a variety of reasons, including the possibility that his new employer could apply on his behalf for permanent residency status. If that application were granted, Plaintiff's alleged injury would never actually materialize because he would be able to remain in the country far longer than the seven-month period at issue. Defendants suggest that, at the present moment, the only "impetus for Guthula's claim is his subjective fear that he may exhaust his H-1B time before his employer files a petition." Defs.' Summ. J. Br. 2, ECF No. 17.

Guthula responds that he has already been injured by the USCIS's unreasonable delay in deciding and ultimately denying his Form I-539 (the application for F-1 status), because it means that his ability to stay in this country on an H-1B has been shortened by the approximately seven-month period during which he was eligible for F-1 status. Had USCIS approved the application more quickly, or had USCIS retroactively granted him F-1 status for those seven months, then Plaintiff could *expect* to remain in the country on his H-1B visa for that additional seven-month period. Guthula argues that he "should not be required to have an employer file an application for permanent residence," nor "should he be required to want" a permanent job offer, "to capture the seven (7) months of H1-B (*sic*) that the law, when properly applied, affords him." Pl.'s Reply 4, ECF No. 18. Guthula has no response to the argument that his alleged injury has not yet fully materialized or that his fear of being injured may never actually come to fruition.

Courts generally agree that a visa-holder can sue for injuries caused by the "arbitrary" or "capricious" denial of an application for a change of nonimmigrant status. *See, e.g., Patel v. Minnix*, 663 F.2d 1042, 1042 (11th Cir. 1981) (affirming district court's decision to enter summary judgment upholding INS's decision to deny change of visa status); *Mahmood v. Morris*, 477 F. Supp. 702, 704 (E.D. Pa. 1979) (finding INS had properly denied plaintiff's application to change from visitor to student visa status); *Bitar v. U.S. Dep't of Justice*, 582 F. Supp. 417, 420 (D. Colo. 1983) (same); *see also Change from one nonimmigrant category to another*, 1 Immigr. Law and Defense § 3:136 ("Practically speaking, federal district court litigation is now the only avenue open for review of [a denial of an application for change of nonimmigrant status].") (footnotes omitted). But none of the cases reviewed by this Court involve a situation like this one

where the applicant was denied one status but simultaneously granted another, thereby eliminating the immediate harm caused by the denial. Nor do the parties cite any other authority on point. Indeed, Plaintiff cites no case law whatsoever.

Neither has the Third Circuit addressed this precise situation. However, it has repeatedly confirmed that "[a]llegations of 'possible future injury' are not sufficient to satisfy Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "An injury-in-fact must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as distinguished from merely abstract, and *the alleged harm must be actual or imminent, not conjectural or hypothetical*." *Id.* (quoting *Whitmore*, 495 U.S. at 155) (quotation marks omitted) (emphasis added). The "imminence requirement 'ensures that courts do not entertain suits based on speculative or hypothetical harms.'" *Id*. (quoting *Whitmore*, 495 U.S. at 155). Thus, "[t]o protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Armstrong*, 961 F.2d at 412 (citing *Salvation Army v. Department of Community Affairs,* 919 F.2d 183, 192 (3d Cir.1990) (quoting *Steffel v. Thompson,* 415 U.S. 452, 460 (1974)).

In *Reilly*, the Third Circuit engaged in an extended discussion on the "injury in fact" requirement, particularly in cases where the alleged injury was too speculative, indefinite or uncertain to satisfy Article III. There, the plaintiffs sued a payroll processing firm after its data system, containing plaintiffs' personal identification information, had been breached by an unauthorized hacker. 664 F.3d at 40. The

plaintiffs believed that the breach increased their risk for identity theft and other harms, because the hacker *might* "commit future criminal acts by misusing the information," or by "making unauthorized transactions in [plaintiffs'] names." *Id*. at 42 (alteration supplied). The district court dismissed for lack of standing, and the court of appeals affirmed, concluding that the plaintiffs' "allegations of hypothetical, future injury" were insufficient "[u]nless and until these conjectures come true." *Id*. The court of appeals relied on a series of Supreme Court decisions in which the Court dismissed the cases because the plaintiffs had "not yet suffer[ed] any harm," and their "alleged injury is not 'certainly impending.'" *Id*. at 43. Put simply, if "one cannot describe how the [plaintiffs] will be injured without beginning the explanation with the word 'if,'" then the "prospective damages, described by the [plaintiffs] as certain, are, in reality, conjectural." *Id.* (quoting *Storino*, 322 F.3d at 297-98).

The same is true in this case. Plaintiff's alleged injury will only materialize *if* no intervening circumstances, between now and the end of his H-1B status on September 9, 2018, affect his ability to stay in this country longer, or shorter, than currently expected. Until his status expires and he is obligated to leave the country, or face the possibility of removal, his alleged injury is too "conjectural" to satisfy Article III. Thus, this Court lacks subject-matter jurisdiction at this time and must dismiss the case without prejudice.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. Darnell Jones, II    J.